# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **JOSEPH BLACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:16-cv-01489-JEO** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Joseph Black brings this action seeking judicial review of a final adverse decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). (Doc.[1] 1). He also has filed a motion to remand the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). (Doc. 14). The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 18). *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a). Upon review of the record and the relevant law,

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

the undersigned finds that the Commissioner's decision is due to be affirmed and that Black's motion to remand is due to be denied.

## I. PROCEDURAL HISTORY

On January 3, 2013, Black filed an application for SSI, alleging disability beginning November 24, 2010. (R.[2] 64, 129).   Following the initial denial of his application (R. 64), Black requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 26, 2014. (R. 40-63).  Prior to the hearing, Black amended his alleged onset date to January 3, 2013. (R. 205).  The ALJ issued an unfavorable decision on March 10, 2015, finding that Black was not disabled. (R. 20-35).

Black requested Appeals Council Review and submitted additional evidence regarding his alleged disability. (R. 16, 212-67). The Appeals Council denied Black's request for review on July 9, 2016. (R. 1-5).  Black then filed this action for judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

---

[2] References herein to "R.__" are to the page number of the administrative record, which is encompassed within Docs. 6-1 through 6-11.

standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 1382c (a)(3)(A).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c (a)(3)(D).

Determination of disability under the Social Security Act requires a five step

analysis:

> At the first step, the ALJ must determine whether the claimant is
> currently engaged in substantial gainful activity. [20 C.F.R.] §
> 416.920(a)(4)(i), (b).  At the second step, the ALJ must determine
> whether the impairment or combination of impairments for which the
> claimant allegedly suffers is "severe." *Id.* § 416.920(a)(4)(ii), (c).  At
> the third step, the ALJ must decide whether the claimant's severe
> impairments meet or medically equal a listed impairment. *Id.* §
> 416.920(a)(4)(iii), (d).  Where … the ALJ finds that the claimant's
> severe impairments do not meet or equal a listed impairment, the ALJ
> must then determine, at step four, whether she has the residual
> functional capacity ("RFC") to perform [his] past relevant work.
> *Id.* § 416.920(a)(4)(iv), (e)-(f). "[RFC] is an assessment … of a
> claimant's remaining ability to do work despite [her]
> impairments." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.
> 1997).  Finally, if the claimant cannot perform her past relevant work,
> the ALJ must then determine, at step five, whether the claimant's RFC
> permits her to perform other work that exists in the national
> economy. 20 C.F.R. § 416.920(a)(4)(v), (g).

*Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014).[3]

The claimant bears the burden of proving that he is disabled within the meaning of

the Social Security Act.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding
precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

The regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

## IV. FINDINGS OF THE ALJ

Black was born in 1972 and has an 8th grade education. (R. 34, 150). He has past relevant work experience as a commercial cleaner, kitchen helper, auto mechanic, and chauffer. (R. 34, 59).

On January 3, 2013, Black filed his current claim for SSI, alleging onset of disability due to depression, bipolar disorder, high cholesterol, short term memory problems, and chronic obstructive pulmonary disease ("COPD").[4] (R. 64, 149). Following a hearing, the ALJ found that Black has the following severe impairments: COPD with a history of tobacco abuse, bipolar disorder, anxiety disorder, and personality disorder. (R. 22). He also found that Black did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 24). The ALJ determined that Black's impairments could reasonably be expected to cause some of his alleged symptoms, but that Black's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (R 33).

---

[4] In 2008, Black filed a similar claim for disability insurance benefits ("DIB"), alleging a disability onset date of November 1, 2007. (R. 20, 66, 143). His DIB claim was denied by the State Agency in 2009 and by an ALJ in 2010. (*Id.*) His request for review by the Appeals Council was denied in 2011. (*Id.*)

The ALJ found that Black had the residual functional capacity ("RFC") to perform light work with multiple restrictions, including (among other restrictions) being limited to the performance of repetitive and routine tasks; work requiring little to no judgment and no more than simple work-related decisions; occasional and casual interaction with the general public, coworkers, and supervisors; and work dealing primarily with things as opposed to people. (R. 32). Based on that RFC finding and testimony from a vocational expert, the ALJ determined that Black could not perform any of his past relevant work. (*Id.*) However, based on Black's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Black could perform, including production assembler, small products assembler, and packing line worker. (R. 34-35). Accordingly, the ALJ determined Black had not been under a disability since January 3, 2013. (R. 35).

## V. APPEALS COUNCIL DECISION

Black sought Appeals Council review of the ALJ's decision. (R. 16). His counsel submitted three briefs to the Appeals Council. (R. 212-67). The second brief, dated November 12, 2015, was submitted with "new and material evidence" consisting of a Psychological Evaluation of Black performed by Dr. David Wilson on August 13, 2015, and medical records from CED Mental Health Center dated August 4 through August 19, 2014. (R. 248).

The Appeals Council denied Black's request for review. (R. 1-5). In its written denial, the Appeals Council stated: "[W]e considered the reasons you disagree with [the ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council. … We found that this information does not provide a basis for changing the [ALJ's] decision." (R. 2). The three briefs submitted by Black's counsel are listed as exhibits on the Appeals Council's order and are part of the administrative record. (R. 5, 212-67). Dr. Wilson's Psychological Evaluation of Black and the new CED records, however, are not listed on the order and are not included in the record.

## VI. DISCUSSION

Black argues five grounds of error: (1) the Appeals Council refused to consider Dr. Wilson's Psychological Evaluation because it was dated after the date of the ALJ's decision; (2) the ALJ failed to give proper weight to the opinion of Dr. Richard Grant, a treating psychiatrist; (3) the ALJ substituted his own opinion for that of Dr. Robert Storjohann, an examining psychologist; (4) the ALJ failed to state adequate reasons for finding him not credible; and (5) the ALJ failed to assess the intensity and persistence of his symptoms pursuant to Social Security Ruling (SSR) 16-3p. (Doc. 10). Separately, Black has moved for a remand of the case pursuant to 42 U.S.C. § 405(g) to require the Appeals Council to consider the submissions it omitted from the administrative record, specifically Dr. Wilson's

Psychological Evaluation and the records from CED Mental Health.[5] (Doc. 14).

Each argument will be addressed below.

## A.   Dr. Wilson's Psychological Evaluation

Black argues that the Appeals Council refused to consider Dr. Wilson's Psychological Evaluation because it was dated after the date of the ALJ's decision. He contends that this "new evidence" establishes his eligibility for benefits under Listing 12.05C.[6] (Doc. 10 at 21-33).  The Commissioner responds that the Appeals Council did consider Dr. Wilson's Psychological Evaluation and that, even with this new evidence, Black has not established his eligibility for benefits under Listing 12.05C. (Doc. 13 at 7-14).  The court agrees with the Commissioner.

Dr. Wilson conducted his psychological evaluation of Black on August 13, 2015, five months after the ALJ issued his decision. (Doc. 14-1)  In addition to meeting with Black, Dr. Wilson reviewed a number of Black's medical records, including a Mental Health Source Statement prepared by Dr. Richard Grant on November 17, 2014; CED records from December 20, 2007 through June 24, 2014; a Consultative Examination performed by Dr. Jack Bentley on January 17, 2008; Quality of Life records from April 22, 2008 through July 23, 2013; a Consultative Examination performed by Dr. Robert Storjohann on July 28, 2010;

---

[5] Black attached copies of Dr. Wilson's Psychological Evaluation and the CED Mental Health records to his motion to remand. (Docs. 14-1 & 14-2).

[6] Although Black asserts that Dr. Wilson's Psychological Evaluation establishes his eligibility for benefits under Listing 12.05D as well, he offers no argument in support of that assertion.

and a Consultative Examination performed by Dr. June Nichols on April 30, 2013.

(Doc. 14-1 at 1). Of particular significance here, Dr. Wilson tested Black's

intelligence using the Wechsler Adult Intelligence Scale test (the WAIS-IV).

Black received a full scale IQ score of 70, which placed him "in the low end of the

Borderline Range of Intellectual Functioning." (*Id.* at 5). Dr. Wilson noted that

Black "had deficits in all areas, but … had extremely deficient Working Memory

and severely deficient Processing Speed." (*Id.*) (emphasis omitted).

As noted, Black's counsel submitted a copy of Dr. Wilson's Psychological

Evaluation along with her second brief to the Appeals Council. (*See* R. 248).

When a claimant presents evidence after the ALJ's decision, as Black has done

here, the Appeals Council must consider the evidence if it is "new, material, and

chronologically relevant." *Beavers v. Soc. Sec. Admin*, 601 F. App'x 818, 821

(11th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). The new evidence must not be

cumulative of other evidence in the record. *Id.* The Appeals Council must grant

the claimant's petition for review if the ALJ's "action, findings, or conclusion is

contrary to the weight of the evidence," including the new evidence. *Ingram v.

Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quotation

marks omitted).

As Black has accurately observed, the Appeals Council omitted Dr. Wilson's Psychological Evaluation from the administrative record.[7] Relying on *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317 (11th Cir. 2015), Black contends that the Appeals Council erred when it "refused to review" Dr. Wilson's evaluation "solely because it was dated after the ALJ decision without considering whether the evaluation was chronologically relevant." (Doc. 10 at 21). Black's reliance on *Washington* is misplaced. In *Washington*, the Eleventh Circuit determined that new evidence a claimant submitted to the Appeals Council was "chronologically relevant" even though the evidence was based on a psychological examination of the claimant that was performed several months after the ALJ's decision. *Id.* at 1322. The Eleventh Circuit held that the Appeals Council erred when it refused to consider this new, chronologically relevant evidence. *Id.* at 1323.

Here, in contrast, the Appeals Council did not refuse to consider Dr. Wilson's Psychological Evaluation. Although the Appeals Council omitted the evaluation from the administrative record, the Appeals Council did include the brief that was submitted with the evaluation. (R. 5, 248-65). The brief contains two extensive summaries of Dr. Wilson's Psychological Evaluation, both of which track the findings and opinions expressed by Dr. Wilson in the evaluation,

---

[7] The Commissioner has not provided any explanation for why the evaluation was omitted from the record.

including Black's IQ scores.[8] (*Compare* R. 248-50 & 262-64 *with* Doc. 14-1).

Black has not identified any material information from Dr. Wilson's Psychological

Evaluation that was omitted from his counsel's summaries of that evidence.

Moreover, contrary to Black's assertion here, there is no statement or other

indication in the Appeals Council's denial of review that the Appeals Council was

"refusing" to consider Dr. Wilson's Psychological Evaluation because it was dated

after the ALJ's decision.

In short, the court is satisfied that the Appeals Council did consider Dr.

Wilson's Psychological Evaluation of Black, notwithstanding that it omitted the

evaluation from the administrative record.  The Appeals Council stated that it

"considered" the briefs submitted by Black's counsel but the information "[did] not

provide a basis for changing the [ALJ's] decision." (R. 2).  The Appeals Council

was not required to provide any further explanation of its reasons for denying

review.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783-85 (11th

Cir. 2014).  Because the Appeals Council included and considered Black's

counsel's brief summarizing Dr. Wilson's Psychological Evaluation, any failure to

include the evaluation in the administrative record was harmless error.

That does not end the analysis, however.  When a claimant presents new

evidence to the Appeals Council but the Appeals Council denies review, a

---

[8] The brief also contains summaries of the additional CED records submitted by Black's counsel. (*See* R. 250-51, 262).

reviewing court must consider whether the new evidence "renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Here, Black argues that the denial of benefits was erroneous because his new evidence from Dr. Wilson establishes his eligibility for benefits under Listing 12.05C (intellectual disability). The ALJ determined that "[t]he severity of [Black's] mental impairments, considered alone and in combination, do not meet or medically equal the criteria of listings 12.04 [affective disorders], 12.06 [anxiety-related disorders], and 12.08 [personality disorders]," but the ALJ did not mention or discuss Listing 12.05C in his decision. (R. 24).

Listing 12.05 provides:

12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation or function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.[9]  The introduction to the mental

disorders listings explains that

> [t]he structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we [the Social Security Administration] will find that your impairment meets the listing.

*Id.* at § 12.00A.  Accordingly, "[t]o qualify under Listing 12.05, [a claimant] must

first meet the diagnostic criteria in 12.05's introductory paragraph: he 'must at

least (1) have significantly subaverage general intellectual functioning; (2) have

deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior

before age 22.'" *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir.

2015) (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11t h Cir. 1997)).  If the

claimant satisfies the diagnostic criteria in the introductory paragraph, he must then

meet "the specific severity requirements in one of the subparagraphs, A through

D." *Id.* at 459.

In his decision, the ALJ observed that there were "no IQ scores in the

record" and that there was "no evidence of intelligence testing." (R. 23).  Dr.

---

[9] Listing 12.05 was amended effective January 17, 2017, but the amendment applies only to decisions issued on or after the effective date. *See Rudolph v. Comm'r, Soc. Sec. Admin*, 709 F. App'x 930, 932 (11th Cir. 2017) ("Although Listing 12.05 has been amended since the ALJ issued his decision, we apply Listing 12.05C as it read on the date of the ALJ's decision.").

Wilson's Psychological Evaluation of Black provides this missing evidence. As noted above, Dr. Wilson gave Black a WAIS-IV test and reported that Black obtained a full scale IQ score of 70. With this new evidence, Black has satisfied the criteria of paragraph C of Listing 12.05. Black has shown that he has (1) a valid full scale IQ score of 70 and (2) physical and mental impairments imposing additional and significant work-related limitations—namely, COPD, bipolar disorder, anxiety disorder, and personality disorder.[10] (R. 22).

However, to be eligible for benefits under Listing 12.05C, Black must also satisfy the diagnostic description in Listing 12.05's introductory paragraph. Specifically, Black must have "deficits in adaptive functioning." The Commissioner argues that "the ALJ['s] discussion of the evidence demonstrates that [Black] did not have 'deficits in adaptive behavior' necessary to satisfy the diagnostic criteria in the 12.05 introductory paragraph," and the court agrees. (Doc. 13 at 13). As the ALJ noted, Black completed a function report in connection with his application for supplemental security income. (R. 24, 164-71). He reported that he had no problems with personal care; he did not need any special reminders to take care of his personal needs and grooming; he was able to prepare sandwiches and do some household chores; he was able to go outside on his own and did so

---

[10] The ALJ expressly found that these "severe" impairments "significantly limit [Black's] ability to perform basic work activities." (R. 22).

three to four times a week; he was able to drive; he was able to grocery shop; and he was able to pay bills and count change, although his girlfriend handled the checkbook. (R. 165-67). Black's girlfriend completed a third-party function report that was consistent with Black's function report. (R. 180-87). The court also notes that Black drove himself to his appointment with Dr. Wilson and told Dr. Wilson that even though he did not have a driver's license, he made sure he had insurance. (Doc. 14-1 at 4). He also told Dr. Wilson that his daily activities included taking his oldest child to school and doing chores around the house. (*Id.* at 5). Simply put, substantial evidence supports a finding that Black does not have the deficits in adaptive functioning needed to satisfy the diagnostic criteria of Listing 12.05 for intellectual disability, notwithstanding the ALJ's failure to address that listing directly. In other words, even with the new evidence from Dr. Wilson that Black has an IQ of 70, substantial evidence supports a finding that Black does not meet Listing 12.05C, which is consistent with the ALJ's determination that Black did not meet any of the listings. Dr. Wilson's Psychological Evaluation of Black does not render the ALJ's decision erroneous.

## B.  Dr. Grant's Opinion

Black next argues that the ALJ failed to accord proper weight to the opinion of Dr. Richard Grant, who Black identifies as a "treating psychiatrist." (Doc. 10 at

34-39).  The Commissioner responds that the ALJ stated "good cause" for the weight he assigned to Dr. Grant's opinion. (Doc. 13 at 14-17).

In assessing the weight to be given an acceptable medical source such as a physician, an ALJ is to consider a variety of factors, including whether the physician examined the individual, whether the physician treated the individual, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty.  *See* 20 C.F.R. § 416.927(c).  An opinion from a treating medical source is generally given more weight than an opinion based on a single examination of the claimant, such as a consultative examination, and an ALJ must give good reasons for discounting a treating physician's opinion.  *See* 20 C.F.R. § 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation and internal quotation marks omitted); *see Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

Here, Dr. Grant completed a "Mental Health Source Statement" on Black on November 17, 2014. (R. 454).  Dr. Grant opined that Black could understand, remember, and carry out very short and simple instructions.  He further opined that

Black could not maintain attention, concentration, or pace for periods of at least two hours; could not perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; could not sustain an ordinary routine without special supervision; could not accept instructions and respond appropriately to criticism from supervisors; and could not maintain socially acceptable behavior and adhere to basic standards of neatness and cleanliness. He identified "lethargy" as a side effect of Black's medications. (*Id.*)

The ALJ gave Dr. Grant's opinion "little to no weight" and explained his reasons for doing so. He observed that Dr. Grant's Mental Health Source Statement was submitted "with no supporting documentation or narrative or even an indication of Dr. Grant's relationship" to Black. (R. 26). With regard to the latter observation, the ALJ noted that although Dr. Grant appeared to be the Medical Director at CED Mental Health Center and one of Black's treating psychiatrists, his name could be found on just "a single document from CED in the record, a February 13, 2014 Physician's Evaluation."[11] (*Id.* (citing R. 451)). The ALJ further noted that Black's individual therapy sessions at CED "appear[ed] to have been with therapy workers" and that "many of the treatment notes from CED [were] unsigned." (*Id.* (citing R. 280-90, 320-26, 371-91, 417-53)). Consequently,

_____

[11] As previously noted, Black submitted additional CED records to the Appeals Council after the ALJ issued his decision. Those records include a Physician's Evaluation dated August 19, 2014, signed by Dr. Grant. (R. 250-51, 262; Doc. 14-2 at 3). Dr. Grant's name does not appear on any other CED records.

"the nature and extent" of Dr. Grant's "treating relationship" with Black was not clear, nor was it clear "how many times Dr. Grant personally evaluated" Black. (*Id.*); *see* 20 C.F.R. § 416.927(a)(2) ("Treating source means your own acceptable medical source … who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).").

The ALJ also stated that Dr. Grant's opinions, as expressed in his Mental Health Source Statement, were "not consistent with or supported by the CED record as a whole," which reflected "primarily moderate symptoms and limitations." (*Id.* (again citing R. 280-90, 320-26, 371-91, 417-53)).  Black disputes this statement and cites to various CED records diagnosing him with bipolar disorder, antisocial personality disorder, panic disorder, and post-traumatic stress disorder ("PTSD") and noting his complaints of mood swings, depression, "hearing voices," and panic attacks. (Doc. 10 at 36-37).  Black fails to show, however, how any of the cited CED records reflect more than moderate symptoms and limitations and he fails to address his "poor history" of medication and treatment compliance, which is documented throughout the CED records. (*See* R.

18

320, 326, 327, 427, 434, 435, 452). Even Dr. Grant noted Black's "gross negligence" regarding his lab work. (Doc. 14-2 at 3).

Moreover, to the extent Black points to his diagnoses of bipolar disorder, antisocial personality disorder, panic disorder, and PTSD, those diagnoses are consistent with and reflected in the ALJ's finding that Black suffers from the severe impairments of bipolar disorder, anxiety disorder, and personality disorder. (R. 22). The ALJ stated that he considered "all credible symptoms of depression and dysthymia under [Black's] bipolar disorder"; "all credible evidence of PTSD, panic disorder without agoraphobia, and social phobia disorder under [Black's] anxiety disorder"; and "all credible evidence of paranoid or antisocial behavior under [Black's] personality disorder." (R. 23). The ALJ also stated that he considered all of the opinion evidence—including Dr. Grant's opinions—in the context of the record as a whole and "more than fully accounted for [Black's] mental health symptoms in the … residual function capacity assessment." (R. 32). Indeed, the ALJ limited Black to repetitive work requiring little to no judgment and no more than simple work-related decisions; occasional and casual interaction with the general public, coworkers, and supervisors; and work dealing primarily with things as opposed to people. (*Id.*) He also found that any changes to Black's workplace should be infrequent and gradually introduced. (*Id.*)

Lastly, the court notes that Dr. Grant's Mental Health Source Statement, in addition to providing no narrative or supporting documentation, is not fully consistent with his own (limited) records. Dr. Grant opined in his Mental Health Source Statement that Black could not maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, yet he assessed Black's behavior as "appropriate" on the two documented occasions when he evaluated Black. (R. 451; Doc. 14-2 at 3). Dr. Grant also opined that Black could not maintain attention, concentration, or pace for at least two hours, but when he evaluated Black on August 19, 2014, he found Black's attention/concentration to be "adequate." (Doc. 14-2 at 3). And he assessed Black's risk as "low" both times he saw Black. (R. 451; Doc. 14-2 at 3).

Premised on the foregoing analysis, the court finds that the ALJ provided good reasons for discounting Dr. Grant's opinions, regardless of whether Dr. Grant is or is not a treating medical source with respect to Black. Substantial evidence supports the ALJ's determination to give Dr. Grant's opinions little to no weight.

## C. Dr. Storjohann's Consultative Psychological Examination

Black next argues that the ALJ erred in "substituting his own opinion" for the opinion of Dr. Storjohann, an examining psychologist. (Doc. 10 at 39). The Commissioner responds that the ALJ properly weighed and considered Dr. Storjohann's opinion. (Doc. 13 at 17).

Dr. Storjohann examined Black on July 28, 2010, at the request of his then-counsel. (R. 362-69). Dr. Storjohann diagnosed Black with bipolar II disorder, depressed; generalized anxiety disorder; social phobia, generalized; attention-deficit/hyperactivity disorder, in partial remission; paranoid personality disorder; antisocial personality disorder; and personality disorder, not otherwise specified. (R. 366). He estimated Black's level of intellectual functioning to fall in the borderline range and assigned Black a Global Assessment of Functioning (GAF) score of 42. (*Id.*) He opined that Black appeared to have "marked deficits in his ability to understand, carry out, and remember instructions in a work setting" and "marked to extreme deficits in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." (*Id.*)

The ALJ provided a thorough discussion of Dr. Storjohann's evaluation of Black and determined that Dr. Storjohann's opinion was entitled to "limited weight." (R. 27-29). The ALJ stated:

> … [Dr. Storjohann's] opinion with respect to the claimant's intellectual functioning is not consistent with or supported by the record as a whole. Furthermore, the claimant acknowledged that his symptoms improved with medication and that he had not been in compliance with his medication for nearly a year at the time of the evaluation. Moreover, Dr. Storjohann's opinion that the claimant has marked to extreme limitations is not consistent with or supported by the record as a whole, including the claimant's treatment record from CED.

(R. 28).  With respect to Dr. Storjohann's assignment of a GAF score of 42 to

Black, the ALJ explained that

> a GAF needs supporting evidence to be given much weight.  The GAF
> is only a snapshot opinion about the level of functioning.  Unless the
> clinician clearly explains the reasons behind the GAF, and the period
> to which the rating applies, it does not provide a reliable longitudinal
> picture of the claimant's mental functioning for a disability analysis.
> For these reasons, a GAF score is … never dispositive of impairment
> severity.  In this case, Dr. Storjohann's GAF score of 42 is not
> consistent with other evidence, and Dr. Storjohann had no treating
> relationship with the claimant.

(R. 29).  The ALJ also noted that Dr. Storjohann's report was also considered by

the administrative law judge who denied Black's earlier claim for DIB, and that

she gave the report only "partial weight" for reasons similar to the ALJ's reasons

here. (*Id.*)

Although Black argues that the ALJ substituted his opinion for Dr.

Storjohann's opinion, he did not.  The ALJ assessed Black's RFC, which was his

responsibility.  *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); SSR 96-5p; *Robinson*

*v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).  An ALJ does not assume the

role of a doctor in assessing a claimant's RFC, and an ALJ is not required to base

his or her RFC finding on a doctor's opinion.  *See Castle v. Colvin*, 557 F. App'x

849, 853-54 (11th Cir. 2014) ("the pertinent regulations state that the ALJ has the

responsibility for determining a claimant's RFC"); *Green v. Soc. Sec. Admin*., 223

F. App'x 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement

containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ.").

Moreover, Dr. Storjohann was not one of Black's treating physicians and his opinion was "not entitled to great weight." *Crawford*, 363 F.3d at 1160. Dr. Storjohann saw Black just one time, twenty-nine months before Black's alleged onset date of January 3, 2013.

The court does note that although the ALJ found that Dr. Storjohann's opinion on Black's intellectual functioning was not consistent with or supported by the record, the WAIS-IV test administered by Dr. Wilson in August 2015 (after the ALJ issued his decision) revealed that Black had a full scale IQ of 70, which is consistent with Dr. Storjohann's estimate that Black's level of intellectual functioning fell in the borderline range. (R. 366; Doc. 14-1 at 5). In all other respects, however, the ALJ's stated reasons for giving Dr. Storjohann's opinions limited weight are consistent with the record. The record reflects that Black informed Dr. Storjohann that he experienced fewer mood swings and was less angry, less suspicious, and less depressed when taking his psychotropic medications, but he had been off his medications for nearly a year at the time of his evaluation. (R. 363, 364). The record further reflects that Black's GAF scores at CED, where Black received his mental health treatment, ranged from 50 to 60,

higher than the GAF score of 42 assigned by Dr. Storjohann.[12] (R. 288, 322, 324, 386, 391, 417, 420, 423, 424, 427, 442, 449, 453). And the CED treatment records do not reflect the "marked to extreme" limitations assessed by Dr. Storjohann; indeed, the most recent CED record that was before the ALJ, dated June 24, 2014, noted that Black had been doing "pretty good" and had been "working some." (R. 453). The additional treatment note Black submitted to the Appeals Council, dated August 8, 2014, similarly noted that Black was feeling "good" and had been managing his anger "OK." (Doc. 14-2 at 2).

In sum, the ALJ stated good cause for assigning Dr. Storjohann's opinion limited weight. Substantial evidence supports the ALJ's decision.

## D.     Black's Credibility

Black also argues that the ALJ failed to state adequate reasons for finding him not credible. (Doc. 10 at 43-47). The Commissioner responds that substantial evidence supports the ALJ's determination that Black's statements concerning the

_____

[12] The court notes that "[t]he Commissioner [has] ... declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and ... [has] indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (internal quotations omitted) (citing 60 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). While a GAF score distills an individual's symptoms and functioning to a single number, an ALJ assessing a claimant's RFC must consider the claimant's "'functional limitations or restrictions and assess ... [his] work-related abilities on a function by function basis.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184). The court also notes that the latest edition of the Manual of Mental Disorders has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Doc. 13 at 21-24).

As noted previously, Black, the claimant, bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See Moore,* 405 F.3d at 1211; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Specifically, Black has the burden to provide relevant medical and other evidence he believes will prove his alleged disability resulting from his physical or mental impairments. *See* 20 C.F.R. § 416.912(a)-(b). In analyzing the evidence, the focus is on how an impairment affects a claimant's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 416.945(a); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

When evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all the evidence – objective and subjective. *See* 20 C.F.R. § 416.929(c)(2). The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, measures a claimant takes to relieve symptoms, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 416.929(c)(3), (4).

To establish a disability based on subjective testimony of pain and other symptoms, a claimant must establish "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225. If the ALJ discredits a claimant's subjective testimony regarding pain, the ALJ must articulate "explicit and adequate reasons for doing so." *Id.* "[T]he ALJ need not cite to 'particular phrases or formulations' to support the credibility determination, … [but] must do more than merely reject the claimant's testimony, such that the decision provides a reviewing court a basis to conclude that the ALJ considered the claimant's medical condition as a whole." *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 849 (11th Cir. 2017) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations omitted)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted). "The question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ explained his reasons for finding Black's testimony to be not

entirely credible:

> A careful review of the record as a whole reveals numerous
> inconsistencies related to the claimant's statements about his mental
> health symptoms and limitations as well as a history of
> noncompliance with psychotropic medications that have helped
> control those symptoms. Indeed, it appears that the claimant was not
> in compliance with his mental health treatment regimen at the time he
> was evaluated by both Dr. Storjohann and Dr. Nichols. His hearing
> testimony was vague and unpersuasive. The best longitudinal record
> of the claimant's mental health symptoms and treatment in the record
> is from CED, despite the claimant's non-compliance and the
> significant gaps in his treatment. This evidence indicates moderate
> symptoms and limitations.
>
> With respect to the claimant's COPD, the record reflects very routine
> and conservative treatment, with the claimant continuing to smoke at
> least 1 1/2 packs of cigarettes per day per his hearing testimony. At
> most, he has had some intermittent exacerbations. He offered no
> specific hearing testimony as to how his COPD affects his ability to
> work, and the written submissions do not reflect any significant
> breathing related limitations. …
>
> Thus, after careful consideration of the evidence, I find that the
> claimant's medically determinable impairments could reasonably be
> expected to cause some of the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence, and
> limiting effects of these symptoms are not entirely credible for the
> reasons explained in this decision.
> …
>
> … The claimant's inconsistent statements, medical non-compliance,
> and vague and unpersuasive hearing testimony undermine his
> credibility and strongly suggest that he has exaggerated his symptoms
> and limitations for disability purposes. The claimant's alleged
> inability to perform all gainful activity simply is not corroborated by
> the evidence in the record considered as a whole.

(R. 33) (record citations omitted).  Elsewhere in his decision the ALJ provided a

more detailed discussion of Black's "vague and unpersuasive" testimony, noting

that Black testified that he "sleeps excessively, including three to five hours

between 8:00 a.m. and 5:00 p.m.," but also testified that he "stays awake for one to

two days at a time and estimated that he does not sleep for 14 days per month." (R.

25; *see* R. 54, 57).  The ALJ also noted Black's admission that his medication

helps with his symptoms. (R. 25; *see* R. 55).

Based on the above, the court finds that the ALJ articulated "explicit and

adequate reasons" for discrediting Black's subjective testimony regarding the

intensity, persistence, and limiting effects of his symptoms.  The ALJ's

determination that Black's testimony was not entirely credible is supported by

substantial evidence.

## E.      Social Security Ruling 16-3p

Lastly, Black argues that the case should be remanded because the ALJ

failed to assess the intensity and persistence of his symptoms pursuant to SSR 16-

3p, which became effective March 28, 2016, more than one year after the ALJ

issued his decision. (Doc. 10 at 48-54).  Black asserts that SSR 16-3p has

retroactive application, but the Eleventh Circuit has held otherwise.  In *Hargress v.

Soc. Sec. Admin, Comm'r*, 874 F.3d 1284, 1290 (11th Cir.  2017), the Eleventh

Circuit held that SSR 16-3p applies prospectively and does not provide a basis for

remand in prior matters. Accordingly, SSR 16-3p does not provide a basis for remand here.

**F.      Motion to Remand**

As noted, Black has filed a separate motion to remand the case pursuant to 42 U.S.C. § 405(g) to require the Appeals Council to consider the submissions it omitted from the administrative record, specifically Dr. Wilson's Psychological Evaluation and the additional records from CED Mental Health Center. (Doc. 14). For the reasons discussed in Section A above, the court is satisfied that the Appeals Council adequately considered Black's new evidence, which was summarized in his counsel's brief to the Appeals Council. (R. 2, 5, 248-65). Black's motion to remand is due to be denied.

## VII.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed and that Black's motion to remand is due to be denied. An appropriate order will be entered separately.

**DONE**, this the 5th day of April, 2018.

_____
JOHN E. OTT
Chief United States Magistrate Judge